CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 MAR 17  PM 3: 47

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TYLER HOLSTEIN | § | |
| | § | |
| v. | § | 2:12-CV-0214 |
| | § | |
| UNITED STATES OF AMERICA | § | |

## REPORT AND RECOMMENDATION
## TO GRANT IN PART and DENY IN PART
## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Defendant TYLER HOLSTEIN has filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.  For the reasons set out below, the undersigned Magistrate Judge recommends defendant's motion be GRANTED, IN PART.  While it is the finding of the court that defendant HOLSTEIN's attorney provided effective representation in all but one instance, counsel's failure to object to the above guidelines sentence deprived defendant of effective representation in that one instance. It is recommended that defendant HOLSTEIN be re-sentenced by the United States District Judge.  No recommendation is made as to what sentence should be assessed as that is a matter solely within the discretion and jurisdiction of the District Judge.  All of defendant's other claims are without merit, and it is recommended those claims be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

On June 14, 2011, defendant was charged by indictment in the Northern District of Texas, Amarillo Division, with two (2) counts of bank fraud, in violation of 18 U.S.C. § 1344.  *United*

*States v. Holstein*, Cause No. 2:11-CR-0031 (01). The indictment alleged that beginning in or

about June 2009, and continuing through on or about May 2011, defendant knowingly devised a

scheme or artifice to (a) defraud Happy State Bank and Amarillo National Bank, financial

institutions whose deposits were insured by the Federal Deposit Insurance Corporation; and (b)

obtain monies, funds, credits and assets owned by and under the custody and control of those

banks and others by means of false and fraudulent pretenses, representations and promises.

Count 1 of the Indictment alleged the defendant:

> [O]btained money from Happy State Bank, Amarillo, Texas, for the purpose of
> purchasing cattle and represented to the bank that the cattle he had in his feed yard
> were secured property of Happy State Bank, when in truth and in fact, as the
> defendant well knew, Friona Industries, L.P. had paid the defendant for the cattle and
> the defendant had not applied the proceeds of the sale to his line of credit with the
> bank as required.

Count 2 alleged the defendant:

> [O]btained money from Amarillo National Bank, Amarillo, Texas, for the purpose
> of purchasing cattle and sold the cattle that were secured collateral of Amarillo
> National Bank and did not apply the proceeds of any sales of cattle to his line of
> credit at Amarillo National Bank as required.

On August 3, 2011, a one-count superseding information was filed charging HOLSTEIN

with making a false statement on a loan or credit application, in violation of 18 U.S.C. § 1014.

The superseding information alleged:

> Beginning in or about November 2009 and continuing until on or about April 2011
> ... defendant, knowingly made material false statements, reports and willfully
> overvalued property and security for the purpose of influencing the action of Happy
> State Bank . . . in connection with an application, advance, commitment, loan . . . in
> that the defendant submitted false and fraudulent borrowing base certificate reports
> of hedged/contracted and unhedged cattle that he represented were the secured
> property of the extension of credit from Happy State Bank, when in truth and in fact,
> as the defendant well knew, they were not.

On August 5, 2011, pursuant to a plea agreement, defendant pled guilty to the count in the

superseding information charging a violation of 18 U.S.C. § 1014. On November 10, 2011, the United States District Judge sentenced defendant to a term of 108 months' imprisonment with a five-year term of supervised release. A mandatory special assessment of $100.00 was levied, and defendant was ordered to pay $9,296,578.00 in restitution. Defendant did not appeal his conviction and sentence.

On October 10, 2012, defendant filed this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. The government filed its response to the motion to vacate on November 19, 2012. Defendant filed a reply to the government's response on December 17, 2012.

On December 12, 2013, an evidentiary hearing was held to receive and consider evidence on some of the ineffective assistance of counsel claims raised by defendant. The Order setting the evidentiary hearing identified all of defendant's other claims the court found defendant had raised in his 2255 motion but set out those other claims did not warrant an evidentiary hearing. The November 14, 2013 Order noted:

> The claims listed appear to be all of the claims petitioner asserts in the motion to vacate. If either party is of the opinion there are additional claims which should be heard by the Court, they shall file, **on or before Wednesday, November 20, 2013**, a pleading setting forth those claims and referencing where in the motion to vacate those claims are made.

Neither party advised the court of any additional claims by the November 20, 2013 deadline.

The evidentiary hearing was held on December 12, 2013. On December 19, 2013, defendant filed his first supplement to the 2255 motion asserting an additional ineffective assistance of counsel claim. It is this additional claim which the court has found to have merit. On December 20, 2013, defendant filed a brief contending defendant is actually innocent of the

offense to which he pled guilty, and requested the court set aside defendant's guilty plea, vacate defendant's conviction and sentence, and grant him a new trial.

II.
DEFENDANT'S ALLEGATIONS

Defendant appears to contend his conviction and sentence violate the United States Constitution for the following reasons:

A.   Defendant's guilty plea was not valid because it:

   1.   was involuntary due to coercion by the government; and

   2.   was not knowing and intelligent because:

      a.   it was induced by misrepresentations of counsel concerning:

         i.   defendant's ability to discharge any restitution obligation in bankruptcy; and

         ii.   the length of sentence he could expect to receive.

      b.   defendant was unaware that restitution was mandatory.

B.   The trial court erred, and denied defendant his constitutional rights, when it:

   1.   denied defendant's motion to withdraw his guilty plea;

   2.   denied defendant his right to allocute at sentencing and coerced defendant into maintaining his guilty plea and waiving his objections to the Presentence Report (PSR) and Addendum;

   3.   violated Rule 11 of the Federal Rules of Criminal Procedure; and

   4.   ordered $9,296,578.00 in restitution.

C.   Defendant was denied his constitutional right to effective assistance of counsel because trial counsel:

   1.   failed to object to the Addendum to the PSR, thereby forfeiting defendant's credit for acceptance of responsibility;

   2.   failed to investigate the facts of the case, present mitigating evidence, or challenge the loss determination;

3.     withdrew defendant's objections to the PSR without obtaining defendant's permission and allowed sentencing to proceed pursuant to an incorrect PSR;

4.     misadvised defendant and failed to file a motion to withdraw defendant's guilty plea;

5.     failed to object to the improper guideline range or sentence imposed.[1]

D.     Defendant's sentence violates double jeopardy and constitutes cruel and unusual punishment;

E.     Defendant is actually innocent of the offense of which he was convicted.


III.
STANDARD OF REVIEW

In its response, the government fully and accurately sets out, at pages 5-6, the appropriate standard of review for motions brought under 28 U.S.C. § 2255, as well as the limitations to granting relief.  Those standards and limitations need not be repeated here.


IV.
CLAIMS NOT RAISED ON DIRECT APPEAL

A § 2255 motion is not a substitute for a direct appeal.  A prisoner may not raise a claim for the first time in a collateral attack unless he shows cause for his procedural default, *i.e.*, cause for failing to raise the issue on direct appeal, and actual prejudice resulting from the error. *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (en banc); *see also United States v. Frady*, 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  Defendant HOLSTEIN has not adequately addressed why he failed to raise his claims of an involuntary plea and trial court error on direct appeal, nor has he shown why his procedural default for failing to raise these

---

[1]This grounds was not raised in the initial motion to vacate.  Defendant was permitted to raise this ground after the evidentiary hearing without objection from the government.

claims should be excused.  Cause for a procedural default can be established by showing counsel

rendered constitutionally ineffective assistance, *see United States v. Patten*, 40 F.3d 774, 776

(5th Cir. 1994).  Such an assertion, however, typically involves a claim that appellate counsel

was ineffective for failing to raise the grounds on appeal.  Defendant has not made a claim that

counsel was ineffective for failing to raise any particular grounds on appeal.  Consequently,

defendant has not demonstrated cause for his procedural default.  A federal court can, however,

review the merits of the claim if the defendant can show that the failure to do so would result in a

fundamental miscarriage of justice.  Although defendant has failed to demonstrate adequate

cause for his procedural default, the court has nonetheless addressed all of defendant's claims.

Defendant's claims of ineffective assistance of trial counsel are not procedurally defaulted and

can be raised in a 2255 motion, and those claims are also addressed below.

## V.
## PRIMARY ISSUES

As set out in paragraph II, the motion to vacate presents a number of claims.  Despite the

number of claims presented, there are two primary issues.  First, whether trial counsel was

ineffective for failing to object to the "above guidelines sentence."  Second, whether trial counsel

was ineffective for failing to investigate and/or challenge the loss amount.  Many of the other

claims involve, at least in part, these two issues, so the court will first address these issues and

then address all other claims.

## VI.
## EFFECTIVENESS OF COUNSEL

The government has set out in detail, at pages 6-7 of its response, the standards applicable

in reviewing claims of ineffective assistance of counsel.  The two-part test for analyzing

ineffective assistance of counsel claims requires a prisoner to demonstrate defense counsel's

performance was both deficient and prejudicial. *Strickland v. Washington,* 466 U.S. 668, 689,

104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Hill v. Lockhart,* 474 U.S. 52, 58, 106

S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's performance is considered deficient if the

attorney made errors so serious he or she was not functioning as the "counsel" guaranteed to the

defendant by the Sixth Amendment to the United States Constitution. *Strickland,* 466 U.S. at

689, 104 S.Ct. at 2064. That is, counsel's performance must have fallen below the standards of

reasonably competent representation as determined by the norms of the profession. A reviewing

court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption

that counsel's performance falls within the wide range of reasonable professional assistance. *Id.*

at 689, 104 S. Ct. at 2065. A defendant must also show he was prejudiced by counsel's deficient

performance. To establish this prong, defendant must show counsel's errors were so serious as to

deprive defendant of a fair trial. Specifically, defendant must show "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different or that the errors were so serious as to deprive the defendant of a fair trial with a

reliable result." *Id.* at 694.

### A. Failure to Object to Sentence Above the Guideline Range

This claim was not initially made in the motion to vacate. Instead, the government, in

addressing defendant's claim that counsel was ineffective for failing to object to the Addendum

to the PSR, stated "the true issue is whether Holstein's attorney should have alerted this Court

that its 108-month sentence was not a sentence at the top of the guidelines range, but a sentence

that was 21 months above it." After identifying this issue, the government suggested defendant's

sentence be corrected and an 87-month sentence be imposed in place of the 108-month sentence

which had been imposed. (*See Response to Motion Under 28 U.S.C. § 2255* at 7).

While the government is to be commended for recognizing and identifying this issue, the

difficulty presented was that no procedural method was identified which would permit this court to reduce the sentence. The government alluded to the failure to object to the sentence as constituting ineffective assistance but stopped short of confessing error and/or stipulating to ineffective assistance. Defendant HOLSTEIN had not asserted an ineffective assistance claim on this ground and did not immediately amend his motion to vacate to assert such a claim based upon counsel's failure to object to the 108-month sentence being outside the applicable guideline range. Consequently, while the government identified a potential error in the sentence and proposed that it be corrected, neither the defendant nor the government identified a procedural vehicle by which the sentence could be corrected absent a claim of ineffective assistance.[2]

In the Order setting the evidentiary hearing on defendant's motion to vacate, the court noted it would "consider whether petitioner HOLSTEIN has alleged an ineffective assistance claim regarding any failure to object to the 108-month sentence imposed and, if he has not, then whether the government has waived any failure of petitioner to make such an allegation." At the close of the evidentiary hearing, the court again noted there was an issue whether defendant had raised this claim of ineffective assistance of counsel or "whether the Government ha[d] raised it for [him]." Tr. 17. Counsel for defendant HOLSTEIN then argued the claim that trial counsel was ineffective for failing to object to the PSR Addendum was broad enough to incorporate a claim that trial counsel was ineffective for failing to object to the sentence assessed as being above the appropriate guideline range or otherwise failing to notify the sentencing court that an improper guideline range was used in determining defendant's sentence. Tr. 290-91. In response, the government explained it liberally construed a sentence in defendant's motion alleging trial counsel should have objected to not receiving a 3-point reduction for acceptance of

---

[2]This claim could have been raised on a direct appeal as a claim of trial court error but could not be raised in a collateral proceeding.

responsibility as "close enough to raise the issue" of ineffective assistance of counsel for failing to object to the use of the incorrect guideline range. Tr. 291-92. Alternatively, the government waived any limitations bar with regard to allowing defendant to amend his motion to vacate to assert this claim. Tr. 292-94. The court granted defendant leave to amend and present the issue as an independent ground of error in a supplemental motion to vacate. Tr. 294-97.

On December 19, 2013, defendant filed the supplement to his motion to vacate asserting "ineffective assistance of counsel for failure to object to the improper guideline range." By his supplement, defendant argued defense counsel was ineffective when he failed to alert the sentencing court it had used the improper guideline range in assessing defendant's sentence. Defendant claims the sentencing range with a 2-point reduction for acceptance of responsibility is 70 to 87[3], and that counsel was deficient for failing to object to the 108-month sentence (guideline range of 87 to 108 months) as being beyond the appropriate guideline range. Defendant also claims the government had conceded defense counsel should have alerted the court to the correct guideline range, and that such failure resulted in prejudice to defendant because his sentence was not within the applicable guideline range. Defendant requested the court grant him a new trial or, in the alternative, "correct" defendant's sentence by reducing it from 108 months to 70 months, a sentence "fairly within the corrected guidelines range after accounting for acceptance of responsibility" (a sentence at the bottom of the range utilizing a 2-point reduction). The government did not file a response to the supplement.

The government agrees defense counsel "should have alerted [the] Court that (1) its 108-month sentence was not within the guidelines range, but was actually 21 months above it [see

---

[3]Defendant did not argue the sentencing court should have utilized the guideline from the original PSR (63 to 78 months) as suggested by the Second Addendum.

discussion below]; and (2) that the top of the guidelines range was 87 months when two levels [were] subtracted for acceptance of responsibility." The government concedes counsel's "failure to alert this Court resulted in prejudice because the government believes this Court would have corrected itself and imposed an 87-month sentence." The government argues an objection to the sentence would have allowed the trial court to correct itself and impose a sentence within the 70 to 87 month range (the range with a 2-level adjustment), presumably at the top of the range as indicated by the trial court's comments when assessing the 108-month sentence. The government argues this court should simply "correct" the sentence appropriately, and reduce defendant's sentence from 108 months to 87 months.

Without question, counsel is responsible for the representation of his client, and the fault in this instance falls upon counsel's shoulders. It must be noted, however, that both the probation officer and the prosecutor were present when sentence was pronounced, and either or both of them could also have raised the issue and alerted the sentencing court an incorrect guideline range had been used. In any event, it is the finding of the undersigned that the 108-month sentence assessed after the sentencing judge's pronouncement that she was going to deny the government's request that no acceptance of responsibility point deductions be given, and was assessing a sentence within, but at the top of, the guideline range should have been objected to by defense counsel. Even if there was minimal opportunity for counsel to be heard after pronouncement of sentence, counsel was obligated to bring the matter to the court's attention and should have at least done so in a post-sentencing motion if counsel did not object at the sentencing hearing.

Based on the government's concession, defense counsel's testimonial admission of error (Tr. 192-93, 225), as well as this court's determination that counsel was deficient in failing to

object to the sentence, the undersigned finds defendant is entitled to relief. Title 28, § 2255 of

the United States Code provides:

> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner *or resentence* him or grant a new trial or correct the sentence as may appear appropriate.

(emphasis supplied).

Defendant's claim that the conviction should be entirely set aside based upon this error is

without merit. The 108-month sentence was not an illegal sentence. The trial court had

jurisdiction to render judgment and the sentence imposed was authorized by law. The sentence

was under the statutory maximum of 30 years, and simply is not an illegal sentence. At most, the

sentence is in violation of the guidelines and is subject to collateral attack only if there was

ineffective assistance of counsel. Since the ineffective assistance related specifically to failing to

notify the court of its inadvertent use of the guideline range from the Addendum instead of the

original PSR, the appropriate relief would be to resentence defendant and *correct the sentence as*

*may appear appropriate* rather than set aside the guilty plea and/or grant a new trial.

In its Second Addendum to the Presentence Report filed September 1, 2011, the

probation officer noted defendant's withdrawal of all of his objections, and his request that those

objections not be considered for any purpose. The probation officer further noted that if the court

allowed defendant to withdraw his objections, the court could disregard the Addendum to the

PSR. The trial court did allow defendant to withdraw his objections and the objections were not

considered for any purpose, but the addendum was not disregarded.

Consequently, at the time of sentencing, the trial court did not have before it a PSR or an

addendum setting out a 70 to 87 month guideline range for a total offense level of 27 with a 2-

level adjustment for acceptance of responsibility. Instead, only the original PSR, which set out a guideline range of 63 to 78 months, and the Addendum, which set out a guideline range of 87 to 108 months, had been presented to the sentencing judge.

It may be that the sentencing judge does determine a within-guidelines sentence at top of the guidelines with a 2-level deduction is appropriate. The judge could also determine that a sentence of less than 87 months is appropriate or, on the other hand, could determine that the original sentence of 108 months or some sentence of less than 108 months but more than 87 months is appropriate, even if it requires a departure and a sentence above the applicable guideline range. Consequently, while the government's position that the sentencing judge intended to assess a sentence within the guidelines, but at the top of the guidelines, i.e. 87 months, is reasonable, only the sentencing judge can say for sure what sentence is the appropriate sentence.

Defendant's ineffective assistance claim in his supplement to his motion to vacate is valid and relief should be granted. It is the finding of the undersigned that the defendant be re-sentenced. No recommendation as to what specific sentence should be assessed is made. The issue of what sentence should be imposed at re-sentencing is and should be left to the sound discretion of the District Judge.

### B. Failure to Investigate and Challenge the Loss Amount

The Sixth Amendment requires counsel "to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. Even strategic choices made after a less than complete investigation are "reasonable" to the extent that

reasonable professional judgments support the limitations on investigation. In determining the reasonableness of an attorney's investigation, this court must directly assess a particular decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* The court must also consider not only the evidence already known to counsel, but whether such evidence would lead reasonable counsel to investigate further. *Wiggins v. Smith,* 539 U.S. 510, 526-27, 123 S.Ct. 2527, 2538, 156 L. Ed. 2d 471 (2003). The reasonableness of an investigation depends in large part on the information supplied by the defendant. *See Ransom*, 126 F.3d at 123. Counsel should, at a minimum, interview potential witnesses and independently investigate the facts and circumstances of the case. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Even so, counsel is not required to investigate everyone mentioned by the defendant." *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985). A defendant who alleges counsel was deficient for failing to investigate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Defendant contends defense counsel was deficient because he failed to investigate and develop mitigating evidence and present such evidence to the government, probation officer and court. Although defendant's claim is broad, it appears to center on counsel's alleged failure to investigate and challenge the amount of the victims' losses in the Indictment, the Factual Resume, and/or the PSR. Defendant argues counsel failed to obtain financial documentation which could have been used to mitigate the loss amount, and also appears to argue counsel should have obtained an independent valuation of the property foreclosed upon by the victims in order to argue the value of such forfeited property should have been subtracted from the loss calculation. Defendant appears to contend if counsel had done this, the loss amount would have

been $7,000,000 or less and the 20-level increase added to defendant's total offense level would not have been applied.

Claims challenging monetary penalties, whether a fine, restitution, or amount of loss, are ordinarily not cognizable in a motion to vacate because such claims do not concern the defendant's custody. *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) (holding complaints concerning restitution may not be addressed in § 2255 proceedings). It is arguable, however, that in a fraud or larceny case, the amount of loss has a direct effect on a defendant's custody because of the application of the sentencing guidelines. Such claims would be cognizable if ineffective assistance of counsel caused an erroneous loss calculation which increased the custodial portion of the sentence. Defendant HOLSTEIN contends the amount of loss in this case was below the $9,296.578.00 amount calculated in the PSR. The guideline Base Offense Level applicable to the offense of conviction was a level seven (7). Since the amount of loss was more than $7,000,000 but not more than $20,000,000, twenty (20) points were added to the Base Offense Level, resulting in an offense level of twenty-seven (27) before consideration of acceptance of responsibility. If the amount of loss had been $7,000,000 or less but more than $2,500,000, then eighteen (18) points, instead of twenty (20) points, would have been added to the Base Offense Level. The offense level would have been reduced even more if the loss amount was further reduced. The issue is whether counsel was ineffective for failing to establish a loss amount which would have decreased the guideline range calculated in the PSR.

Defendant HOLSTEIN's feedlot and cattle operation was financed primarily by Happy State Bank with a line of credit collateralized by cattle purchased and owned by HOLSTEIN. Similar to an automobile dealership floor plan with a financial institution loaning operating funds secured by inventory, defendant HOLSTEIN bought cattle, fed and fattened them, and sold them

at a higher price because of weight gain. The cattle HOLSTEIN owned and fed were the collateral for the loan.

In order to remain fully secured in the cattle HOLSTEIN was "growing," Happy State Bank required defendant to provide monthly borrowing base certificate reports to verify defendant's ownership in the cattle. Defendant HOLSTEIN's claim under this ground, however, is not that the Borrowing Base Reports, while false, were not fraudulent to the degree alleged. Instead, he contends the reports he submitted were not false at all, but were interpreted differently by the bank than defendant intended. This is inconsistent. In essence, defendant appears to contend he is not guilty, but if he is guilty, he is not as guilty as the PSR states. At the hearing, defendant attempted to explain how the bank erroneously interpreted the dollar figures set out in the borrowing base reports. The court does not fully understand HOLSTEIN's explanation but it appears he contends the bank believed the dollar values defendant set out in the reports reflected the value of the collateral after deducting "the amount of down payment and/or purchase receipts for the cattle," when defendant had, instead, set out the full dollar value of the contracts in the reports. Tr. 79-80, 267. Defendant also testified he told counsel, as well as the government prosecutor, that records existed to dispute the amount of loss claimed by the victims, namely ledgers and supporting notes that showed the overall picture of how he had valued the contracts on the borrowing base reports, and that such records supported his representations of the values. Tr. at 267. Defendant testified he also told counsel and the government that Happy State Bank had taken his office records and had not returned them. Tr. 89. Defendant testified he urged defense counsel to get his documents from Happy State Bank, and that counsel requested the documents, but the bank never gave the documents to counsel. Tr. at 266. Defendant testified the records were held by the bank in storage until after he was sentenced and were only then

provided to defendant's bankruptcy attorney. Tr. at 89, 266. Defendant testified his counsel in

the criminal case never obtained these records, which would have shown that the loss estimates

were incorrect. *Id.* Defendant testified defense counsel never showed him any documentation

which supported the loss amounts, and that the actual amount of the loss was not established

until his bankruptcy proceedings, which occurred after sentencing. Tr. 101, 103.

Defendant's bankruptcy counsel testified at the 2255 hearing. He stated the government

prosecutor informed him after defendant had been sentenced that she never received any financial

records that had been in defendant's possession and advised him to contact Happy State Bank.

Tr. 57-58. Bankruptcy counsel testified he eventually received 10-12 boxes of records from

Happy State Bank that the bank had seized from defendant and held in storage. Tr. 58.

Bankruptcy counsel testified he did not speak with defendant's criminal defense counsel. Tr. 60.

Bankruptcy counsel did not, however, offer any testimony of the actual amount of loss incurred

by defendant's creditors, nor did he provide any schedules or calculations which established a

total loss amount under $7,000,000.00.

Criminal defense counsel testified he had all of the records provided by the government

and had reviewed these records prior to defendant's guilty plea. Tr. 165, 167. Counsel testified he

asked defendant for financial records, and defendant advised him "he didn't have any," explaining

he did not have a bookkeeper and that anything he would have had the bank had. Tr. 165.

Counsel acknowledged his file contained notes of his paralegal which stated:

> Need from Feed Yard –
> Ledger Books
> Bank Statements – HSB

Tr. 186. Counsel clarified that defendant HOLSTEIN did not provide him with any records and

that he did not subpoena any records from Happy State Bank because he and defendant "had

already gone over the case and [defendant] had made the decision to plead guilty to furnishing

false information to the bank." Tr. 165. Upon questioning by the court, counsel confirmed that

defendant never provided him with any documentation which would show the Borrowing Base

Certificates were truthful. Tr. 228. Counsel acknowledged he did receive records from

defendant's Fort Worth civil attorney prior to defendant's indictment but was not aware if they

were all of defendant's records or not. Tr. 228-29.

The probation officer who investigated defendant's case and prepared the PSR testified at

the § 2255 evidentiary hearing that he talked to the bankers involved in this case and to one of the

victims, Friona Industries. The probation officer stated that in calculating the loss amounts in the

PSR he had the supporting documents from the FBI's investigation and all documents in the U.S.

Attorney's possession. Tr. 276. The probation officer acknowledged he did not know Happy State

Bank had any additional records, and that he only used the documents given to him by the

government. Tr. 282.

Defendant HOLSTEIN has not met his burden to establish he would be entitled to any

relief under this claim. Defendant has repeatedly argued the loss amounts in the PSR were

inaccurate and that there were additional financial records, either in the possession of Happy State

Bank or his Fort Worth attorney, and that criminal trial counsel should have obtained and reviewed

those records to determine an accurate loss amount. Defendant has not produced any documents,

either prior to or during the evidentiary hearing, to prove these allegations and he has completely

failed to show how any missing records would have benefitted him. While defendant produced

some records with his post-hearing brief on actual innocence, he has not identified them as the

records he alleges counsel failed to obtain or investigate, nor has he shown how these records

demonstrate the loss amount was in error.

Nor does defendant HOLSTEIN identify with any specificity what he contends counsel

should have challenged regarding the alleged loss amounts. Defendant contends property foreclosed upon by the banks was undervalued, but provides no evidence of what he contends was the correct value. He has not provided the documentation he contends a more thorough investigation would have uncovered to rebut the loss amounts in the PSR, nor has he even stated what the <u>actual</u> loss amounts should have been. Again, it is unclear whether defendant is claiming he was actually innocent and that there was no loss or, instead, is claiming only that he misled the bank, but not to the degree alleged and that the amount fraudulently obtained was overstated. Defendant's conclusory assertions do not establish the required prejudice and fall short of the level necessary to prevail on a claim of ineffective assistance. Defendant has failed to meet his burden of showing counsel was deficient for failing to further investigate in that he has failed to allege or prove what any further investigation would have revealed and how it would have altered the outcome of his case.

### C. Failure to Investigate Validity of the Charges and Failure to Challenge the Government's "Taking" of Defendant's Property

Defendant also contends counsel was deficient because he failed to:

1.   investigate the facts of the case to determine the validity of the charges in the Indictment or in the Superseding Information; and

2.   assert "a statutorily and factually supported defense that would have prohibited the Government from taking his property that was legally obtained."

In his post-hearing brief on actual innocence, defendant appears to contend there are records which would have shown the breakdown of the calculations he submitted in the Borrowing Base Certificates and would have shown the specific percentage of ownership in the cattle defendant claimed in these reports. Defendant asserts Happy State Bank told him to submit only the top page or summary page of the Borrowing Base reports and that this resulted in the bank misinterpreting the reports instead of being a false statement. Defendant also appears to contend

an investigation of defendant's records would have shown it was impossible for him to have

received cattle purchase money from Friona Industries without depositing the money into a Happy

State Bank account, and that once deposited, such funds were subject to being applied toward the

line of credit he had with the bank.  Defendant maintains the records would counter the allegations

of bank fraud in the original indictment.  Such arguments, although far from clear, can be viewed

in support of defendant's claim that proper investigation by counsel would have resulted in a valid

challenge to the criminal charges in either the Indictment or the Superseding Information.

As discussed under part VI, § B, defendant has failed to produce any documentation to

establish he was prejudiced by any alleged failure of counsel to conduct any additional

investigation.  To the extent, if any, defendant claims additional records would have exonerated

him, he has not submitted evidence or argument demonstrating the "summary page" of the

Borrowing Base Reports submitted to Happy State Bank between July 2009 and March 2011 were

accurate and did not contain false statements, nor has he furnished the "detailed attachments" he

contends would establish that his calculations, specifically his percentage of ownership in the

numbers of cattle and value of collateral on the "summary page" of the Borrowing Base Reports

were truthful.  Further, the documents defendant did produce in support of his claim of actual

innocence do not show what defendant claims.  Basically, Holstein contends, unrealistically, that

his Happy State Bank loan was secured, in part, by collateral Holstein did not own.  Holstein

claims the monthly reports to Happy State Bank included values of cattle Holstein did not own and

that this was the bank's fault because the bank told Holstein not to include the "attachment sheet"

he had used with his previous lender, Chase Bank.

The attachment sheet, however, establishes the opposite of what Holstein contends.

Exhibit "D" to his brief on actual innocence, the borrowing base certificate, and attachment

submitted to Chase Bank reflects that only defendant HOLSTEIN's interest in the cattle is included as security.  The percentages of cattle not owned by defendant HOLSTEIN *were not pledged* as collateral and were not reflected on the Borrowing Base Reports.  Defendant has not met his burden of demonstrating counsel's investigation was deficient, and, even if he had, he has not proven what any further investigation would have proven or how it would have altered the outcome of the prosecution.

Lastly, there was no government forfeiture of defendant's property, and defendant does not identify what property the government "took."  Nor does he identify the "statutorily and factually supported defense" counsel should have presented "that would have prohibited the Government from taking his property."

### D.  Failure to File Motion to Withdraw Guilty Plea

In ground C. 4. (as listed in Part II, Defendant's Allegations, page 5), defendant contends counsel was deficient when he misadvised him and failed to file a motion to withdraw the guilty plea prior to sentencing.  Defendant argues he was prejudiced because the trial court would have granted a motion to withdraw his plea.  Defendant's testimony at the § 2255 evidentiary hearing was that he twice requested counsel withdraw the guilty plea before the PSR was submitted on September 22, 2011, and requested the guilty plea be withdrawn numerous times after completion of the PSR.  Tr. 96.  Defendant testified that after the PSR was submitted, counsel told him it was "a little late in the game" to withdraw his guilty plea, and that counsel said to "trust him" and "not to worry."  *Id.*  Defendant further testified counsel assured him the PSR would be correct at sentencing.  *Id.*  Defendant acknowledged during the § 2255 hearing that he did not, in a September 25, 2011 letter he sent to the trial court, state that he had "instructed his attorney repeatedly to withdraw [his] guilty plea" and that counsel had refused to do so.  Tr. 113.

Defendant also acknowledged he did not complain about his lawyer in that letter to the trial court, did not discharge counsel when counsel allegedly failed to follow defendant's instructions to file a motion to withdraw his plea, and even paid counsel additional fees despite the alleged failure to comply with his requests to file a motion to withdraw the plea.  Tr. 132-36.

Defense counsel testified defendant HOLSTEIN never asked him to withdraw his guilty plea.  Tr. 197.  Counsel further testified defendant never told him he wanted a trial or wanted counsel to try the case.  Tr. 198-99.  Counsel testified he would have tried the case if defendant had asked or wanted to, even though it would have been against his better judgment and his legal advice.  Tr. 199.  When re-called in rebuttal, defendant testified counsel's testimony that defendant did not tell him to withdraw the plea was "[a]bsolutely not" true.  Tr. 267.

The testimony from defendant and from defense counsel is completely contradictory, and there is no direct evidence to support one version over the other, although the fact that defendant did not reference his desire to have counsel withdraw his guilty plea in his September 25, 2011 letter to the court, and his failure to profess his innocence and/or request to withdraw his plea at sentencing is probative.  The absence of any mention of a desire to withdraw his plea supports an inference that the requests for counsel to move to withdraw the plea were not made.  Resolution of this issue boils down to whether the burden of proof has been met.  In this collateral proceeding, it is defendant's burden to show (1) he requested counsel file a motion to withdraw his guilty plea, (2) that counsel did not file such a motion, and (3) that defendant was prejudiced by counsel's failure to do so.  Based on the lack of evidence as outlined above, defendant has not met his burden.

Further, even assuming, for purposes of argument, that defendant HOLSTEIN had requested counsel file a motion to withdraw his guilty plea, defendant has not shown he was

prejudiced by the failure to do so.  While the trial court *may* permit a defendant to withdraw his

guilty plea before sentencing upon the defendant's showing of a fair and just reason for

withdrawing the plea, a defendant has no absolute right to withdraw a guilty plea.  *See United*

*States v. Brewster*, 137 F.3d 853, 857-58 (5th Cir. 1998).  In determining whether a defendant has

made a fair and just showing to withdraw his guilty plea, the court must consider several factors,

but the decision to permit or deny withdrawal is based on the totality of the circumstances.  *Id.*

Defendant has not established what fair and just reason he would have presented for

withdrawing his guilty plea.  From his testimony at the hearing, defendant's primary motivation to

set aside his conviction appears to be because of the 108-month sentence he received.  Defendant's

testimony shows he considers this sentence to be harsh and unfair.  Defendant's post-guilty plea

letter to the trial court, which he contends was an implied motion to withdraw his guilty plea, is

not a denial of guilt.  Instead, it is a plea for leniency.  A plea for a probated sentence or for

leniency does not evidence a profession of innocence.  Defendant has not demonstrated a

reasonable probability that the trial court, considering the applicable factors and the totality of the

circumstances, would have permitted a withdrawal of the guilty plea.  Defendant has not met his

burden of demonstrating deficiency on the part of counsel, prejudice to himself, or the

unconstitutionality of his conviction and sentence.[4]  This claim should be denied.

### E.  Failure to Object to PSR Addendum

In ground C. 1. (as listed in Part II, Defendant's Allegations, page 4), defendant

HOLSTEIN alleges counsel failed to object to the Addendum to the PSR.  The United States

Probation Officer, in the PSR, awarded defendant a 2-level reduction in the offense level

---

[4]The trial court judge is in the best position to say whether a motion to withdraw the guilty plea would have been granted.

computation under USSG § 3E1.1(a) because defendant "clearly demonstrated acceptance of responsibility for his offense." The PSR further noted that, according to the Assistant United States Attorney:

> [D]efendant assisted the government in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial. The timeliness of his notification to enter a plea of guilty permitted the government and the court to allocate their resources efficiently. One additional offense level will be subtracted for acceptance of responsibility, for a total of 3 levels. At the time of sentencing, the government will formally move the court to grant the additional 1-level reduction.

After the three (3) offense levels were subtracted as an adjustment for defendant's acceptance of responsibility, the PSR calculated a Total Offense Level of 26 with a Criminal History Category of I, resulting in a Guideline Range of Imprisonment of 63 to 78 months.

On October 7, 2011, defendant submitted objections to the PSR which appear primarily to be challenges to the loss determination.

On October 17, 2011, the government served its response to defendant's objections on defense counsel[5] stating:

> While the defendant timely entered his plea of guilty and at the plea hearing appeared to comply with the requirements of full acceptance of responsibility, it has become apparent during the presentence process that he [has] not accepted responsibility pursuant to U.S.S.G. 3E1.1, and has engaged in obstructive conduct.
>
> 1. The government submits that the defendant is falsely denying and frivolously contesting the conduct comprising the offense of conviction. The objections submitted by the defendant are misleading, lack relevance, cast aspersions on the victims, and are not consistent with a person who has admitted guilt. The government submits that the defendant is not acting in a manner consistent with acceptance of responsibility.
>
> 2. The government submits that the defendant has sold and concealed assets. The defendant purchased a 2011 Ford Pickup using funds from his line of credit at Happy State Bank and titled the truck in his name alone. The defendant purchased a 1966 Ford Mustang with Happy State Bank money. On September 26, 2011, the bank

---

[5] The response was not filed with the court until November 9, 2011.

provided the titles of the vehicles to the defendant via his attorney for the purpose of obtaining the signature of the defendant to release and transfer the vehicles to the bank. On September 27, 2011, the defendant advised the bank that he no longer had either vehicle, not withstanding that the bank constructively held the title to the vehicles.

Such conduct not only displays a failure to accept responsibility, it rises to obstructing or impeding the administration of justice pursuant to U.S.S.G. § 3C1.1.

The government submits that the intentional sale of the vehicles described above by the defendant is willful obstruction and an impediment to the administration of justice and therefore he should not receive points for acceptance of responsibility and he should be assessed a 2 level increase in his offense level for obstruction.

Due to the defendant's misleading and inaccurate representations to the probation officer, and his unlawful sale of assets, the government submits the defendant's offense level should be corrected to reflect the loss of 3 levels for acceptance of responsibility and an increase of 2 levels for obstruction. The result is a total offense level of 32, criminal history category I, and a guideline range of 121-151 months.

*Government's Response to Defendant's Objections to the Presentence Report*, at 2-3.

On October 20, 2011, the probation officer filed an Addendum to the PSR in response to

defendant's objections. As relevant to this ground the Addendum stated:

It appears the defendant *is attempting to shift blame* to HSB for the loss associated with ANB.

*Addendum to the Presentence Report*, at 5 (emphasis added).

For the defendant to assert there is no significance attached to money being moved from the Double H account to the J Bar H *is a denial of how he committed the instant offense*. Selling J Bar H cattle under the guise of them actually being cattle owned by Double H helped him perpetuate the ongoing loss to HSB. *It appears the defendant is continuing to defend his criminal activity and not take full responsibility for his actions.*

*Addendum to the Presentence Report*, at 6 (emphasis added).

Again, it appears the *defendant is not accepting responsibility for his actions.* He continues to deny what are obvious facts and is mitigating the harm he caused others.

*Addendum to the Presentence Report*, at 7 (emphasis added).

The defendant *continues to minimize the harm he caused* the victims in this case.

*Addendum to the Presentence Report*, at 9 (emphasis added).

> Based on the *defendant's failure to accept full responsibility for his actions* that created financial havoc for two banks and three cattle companies, it appears appropriate to deny the defendant the 2-level reduction pursuant to USSG § 3E1.1(a). Furthermore, AUSA Drake has indicated she would not be filing the additional I-level pursuant to USSG § 3E1.1(b). The defendant has made several excuses for the trouble he has created, from pointing at the victims themselves, to the economy, to the weather. *He has not fully accepted that it was his own actions and choices to mislead the bank by falsifying his true financial picture. He has denied essential elements of the offense*, specifically, he has stated in more than one objection that he paid HSB and the money he made was applied toward his line of credit, when the facts clearly show the opposite is true.

*Addendum to the Presentence Report*, at 11 (emphasis added).

> The government has also recommended to the court that a 2-level enhancement be applied for obstruction of justice based upon the defendant's failure to provide promised and available assets to HSB to help rectify the loss he caused. This officer was unable to locate case law that was specifically on point with this issue. Even though the defendant liquidated the two vehicles and has failed to provide the bank with titles to other vehicles/equipment, it appears to this officer that these actions do not rise to the level of obstruction of justice but does further reinforce the denial of acceptance of responsibility.

*Addendum to the Presentence Report*, at 12. The probation officer stated his position that the PSR be modified to eliminate the paragraph addressing defendant's adjustment for acceptance of responsibility, and to remove the 3-level adjustment from the offense level computation for acceptance of responsibility with the inclusion of the following:

> Adjustment for Acceptance of Responsibility: The defendant has not demonstrated acceptance of responsibility for his offense because he has placed blame on the victims and other outside factors for the harm caused in this case. He has repeatedly stated he paid the bank and the loss was not due to his own criminal intent. Furthermore, he has liquidated assets that could have offset some of the financial harm to HSB and failed to cooperate with the bank in obtaining other assets. Therefore, 2 levels are not subtracted for acceptance of responsibility. USSG § 3E1.1, comment (n.2).

*Addendum to the Presentence Report*, at 13. The total offense level without the 3-level reduction resulted in a Total Offense Level of 29, and a Guideline Range of Imprisonment from 87 to 108 months.

On October 27, 2011, after receiving the government's response and the Probation officer's Addendum to the PSR, defendant withdrew his objections to the PSR and requested that the objections not be considered for any purpose.

On November 1, 2011, the probation officer filed a Second Addendum to the PSR stating that if the trial court allowed defendant to withdraw his objections, the court could disregard the first addendum to the PSR and, instead, utilize the original PSR.

On November 9, 2011, defendant filed his reply to the government's response to his objections to the PSR stating:

> Defendant Objects to the government's request to deny Defendant credit for acceptance of responsibility. Defendant has pled guilty to the offense of False Statement on Loan, Credit Applications, and Renewals (18USC § 1014), and has accepted responsibility for commission of that offense.

> The government, because of Defendant's Objections to the Government's Presentence Report, is recommending that Defendant not receive credit for acceptance of responsibility and that he be assessed a 2 level increase in his offense level for obstruction.

> To follow the government's recommendation would have a "chilling effect" on the Defendant's right to express his objections to the Presentence Report and encourage Defendant not to be forthcoming and express his perspective on aspects of the case as he perceived it.

On November 10, 2011, the sentencing hearing was held, during which the government and defense counsel argued their respective positions. In response, the trial court stated:

> Well, I'll say this: That I think the Government's position was a reasonable one. I am not going to remove the two points for acceptance of responsibility because it is a close question, but I think that the Government's position was reasonable, and I don't think it was improper.

> The Presentence Report – while the Presentence Report shows what the guidelines would be if those were removed, the Presentence Report does not recommend those guidelines, but it recommends the guidelines based on the acceptance of responsibility being retained.

Tr. 10. Defense counsel also stated to the court:

> Having gone through all the evidence in this case and spoken with my colleague, Ms. Drake, Mr. Holstein is a young man that made some bad judgments and decisions that rose to the level of criminal activity.
>
> And I will say this, not wanting to hurt my client, and I'm not offering this as an excuse, but I would represent to the Court that had the bank involved in this case been on their A-Game and done the things they were supposed to do, I don't think we would be standing here today. Thank you.

The trial court then ordered defendant be committed to the custody of the Federal Bureau of Prisons for a term of 108 months, and ordered defendant to immediately pay restitution in the amount of $9,296,578.00. The court stated:

> Now, I've set your penalty at – within the guidelines, but at the top of the guidelines, and it's obvious because of the amount of money and the length of time and the calculations that were involved in this offense that that's an appropriate sentence.
>
> You conducted these activities while living a relatively expensive lifestyle. And the Court believes that its sentencing is necessary to meet the objectives of punishment and deterrence.

The court noted counsel's argument that the bank was partly at fault and acknowledged the bank was not as careful as it should have been, but explained the bank's failure was not a factor considered in the defendant's sentence calculations because the deficiencies of the bank did not excuse defendant's activities.

Defendant's contention under this ground is that counsel was deficient because he failed to object to the first Addendum to the PSR calling for the denial of any adjustment for acceptance of responsibility. Defendant argues counsel should have objected "to the taking of 3 points" and failure to do so prejudiced defendant because he would have received "2 or 3 points for acceptance of responsibility."

Defendant's claim is without merit. When counsel withdrew defendant's objections to the PSR, the Addendum became moot. Further, defense counsel filed written objections to the government's response to defendant's objections to the PSR and challenged the government's

request that the court deny defendant all credit for acceptance of responsibility, arguing defendant

had pled guilty and accepted responsibility for the commission of the false statement offense to

which he pled.  The action of defense counsel in objecting to the government's response instead of

objecting to the PSR Addendum was the correct action.  The government's response was the only

live pleading which sought to deny defendant acceptance of responsibility.  The Addendum had

been withdrawn by the probation officer.  The court was clearly informed of counsel's position

that defendant should receive the adjustment for acceptance of responsibility and counsel's failure

to file additional, repetitive objections to the withdrawn addendum would not have benefitted

defendant.  This is particularly so in light of the second addendum filed by the probation officer

which provided that the first addendum could be disregarded.  When the sentencing court allowed

defendant to withdraw his objections, the Addendum was, in effect, disregarded and there was

nothing left for defendant to object to.  Moreover, any failure to object to the Addendum did not

prejudice defendant as the court did not, in fact, remove the 2-level adjustment for acceptance of

responsibility.[6]  Defendant's claim that counsel was deficient for failing to object to the Addendum

should be denied.

F.  Withdrawal of Objections to the PSR and Allowing an Incorrect PSR to Stand

In ground C. 3. (as listed in Part II, Defendant's Allegations, page 5), defendant claims

counsel was ineffective for withdrawing defendant's objections to the PSR.  Those objections were

discussed above and asserted what primarily appear to be challenges to the loss determination.

After the government responded to his objections by arguing defendant was not entitled to any

reductions for acceptance of responsibility and, in fact, should be assessed a 2-level increase for

---

[6]Defendant did not withdraw this ground when he filed his supplemental motion which is addressed in Part VI, § A, of this Report and Recommendation.  Therefore, this claim has been addressed.

obstruction of justice, and after the Probation Office's Addendum to the PSR withdrew the 2-level

reduction for acceptance of responsibility and noted the government would not be filing for an

additional 1-level reduction, defendant, in a written pleading filed by counsel, withdrew the

objections and requested they not be considered for any purpose. The probation officer then

advised the court that upon defendant's withdrawal of his objections, the addendum could be

disregarded and the original PSR reinstated.

At the sentencing hearing, defense counsel addressed the objections which had been filed

and withdrawn stating:

> Your Honor, once we received the Presentence Report, we filed several comments and
> objections. Subsequent to that, I was informed by the probation office and the
> Government that they were pretty upset with the objections that we filed. They felt
> like it was a lack for – a lack of accepting responsibility. I subsequently, on behalf of
> my client, withdrew those objections.

Tr. 5. Counsel further stated they were satisfied with the addendum, except to the extent that it

denied defendant the reduction for acceptance of responsibility. *Id.* Counsel clarified that the

objections had been withdrawn in an attempt to "salvage any type of sentencing benefit

[defendant] might get" because the "Government was not happy" with the objections and had

attempted to punish defendant by requesting denial of the acceptance of responsibility reduction

and requesting an obstruction of justice increase. Tr. 7.

The court advised it was "not going to remove the two points for acceptance of

responsibility because it's a close question." Tr. 10. The court confirmed with defendant that he

and counsel had discussed the objections prior their filing, and advised him that even though the

objections had now been withdrawn, that defendant could still tell the court anything he thought

was objectionable in the PSR. Defendant then explained to the court that his objections had been

an attempt to comment on things that were "unclear or incorrect" and to present his views as to

what had taken place because some of the facts "were just wrong." Tr. 11. However, when asked if he then wanted to tell the court anything that was wrong with the PSR that counsel had not presented to the court, defendant replied there was not. *Id.* Defendant then again confirmed that he did not have anything he wanted corrected in the PSR. Tr. 11-12. Finally, after a conference with counsel, defendant HOLSTEIN confirmed the Addendum, "to the extent that it clarified some things at [defendant's] request," was also correct. Tr. 12.

Defendant appears to argue that if counsel had not withdrawn his objections, the court would have sustained the objections, and a reduction of the loss amount, and of the guideline range would have followed. Defendant also contends counsel was deficient for allowing an incorrect PSR to stand unchallenged.

At the evidentiary hearing, defendant HOLSTEIN testified the PSR was incorrect and that in an attempt to correct the PSR he drafted all of the objections and emailed them to defense counsel. Tr. 93. He then testified counsel indicated he would reword the objections in a more professional manner and file them, but that when defendant received the filed copy, the objections were exactly the objections he had written. Tr. 101. Defendant testified he also submitted "a lot of documentation and a lot of evidence" in support of his objections, but that counsel did not submit any documentation with the objections. Defendant testified counsel told him his objections would be heard and the PSR would be 100% correct before sentencing. *Id.* Defendant testified counsel also told him there was a good chance defendant could receive a downward departure but that one was never requested. Tr. 105.

Defendant testified that after the objections were filed counsel indicated the government prosecutor was "really p***** off" as a result of defendant's objections to the PSR and that counsel thought "he could calm her down by making her job easier and withdrawing the

objections." Tr. 92.  Defendant testified he did not agree to withdrawing the objections simply because the prosecutor was mad at his attempt to correct the PSR, found it "unconscionable," and wanted the objections heard.  Tr. 93.  Defendant testified the events regarding the waiver of the objections transpired only hours before the sentencing hearing.  *Id.*

On cross-examination, Holstein acknowledged he was present during the sentencing hearing when counsel confirmed with the court that they had withdrawn the objections, and also acknowledged the exchange he had with the court concerning any corrections he wished to make to the PSR.  Defendant further testified, however, that during the attorney-client conference during sentencing, he asked counsel, "What do I say?  It is still not correct," and that he was advised by counsel to tell her it was right.  Tr. 107, 144.  Defendant testified the PSR was not correct because counsel had withdrawn all of the objections to the PSR.  Tr. 144.  Defendant also testified the Addendum was not correct and contained incorrect amounts with regard to the losses, but that he was not permitted to object to the Addendum despite repeated assurances from defense counsel that everything would be correct.  Tr. 100, 144-50.  Defendant testified that if his objections had not been withdrawn and had been sustained by the court, the loss would have been less than $7 million, resulting in a lower guideline range.  Tr. 101.

Although defense counsel initially testified he wrote the objections in collaboration with defendant and that he drafted the objections per defendant's instructions, Tr. 180-81, he later clarified the defendant wrote the objections to the PSR, that defendant then came into counsel's office in person and they went over each of the objections over a period of approximately six (6) hours, that counsel "cleaned them up" and asked defendant some questions so he could put the objections in a presentable format.  Tr. 223-24.  Counsel testified the government prosecutor and the probation office "went through the roof" when they received the objections and were taking

away all deductions for acceptance of responsibility and were also going to try to add two more points for obstruction of justice. Tr. 181. Counsel testified he advised defendant they could leave the objections filed and risk loss of the points for acceptance, as well as an addition of two (2) points for obstruction, or they could withdraw the objections and, even then, they would still run the risk that the government might continue to argue against any acceptance of responsibility deduction and for the obstruction increase. Tr. 181-82. Counsel testified defendant said, "[W]ell, if it means me getting my acceptance of responsibility, getting my deduction for that, then I want to withdraw them." Tr. 182. Counsel testified he again advised defendant that the government would be arguing against defendant receiving the 2-point reduction, but explained they would ask the court for at least the 2-point reduction based upon the withdrawal of the objections and that he believed the court would understand defendant was merely trying to explain things in the PSR and was not denying responsibility. *Id.* Counsel testified defendant agreed and that he would not have withdrawn the objections without defendant's consent. *Id.* Counsel testified the record of the sentencing hearing reflected defendant consented to withdrawing the objections. Counsel reiterated he had gone over the withdrawal of the objections with defendant at his office and that defendant had advised counsel they should withdraw the objections. Tr. 183, 184.

Defendant was re-called to testify and denied ever spending six hours with counsel going over the objections. Tr. 264. Defendant testified he emailed his draft of the objections to defense counsel and to his Fort Worth civil counsel because he lived in Kansas at the time, and that the only discussion he had with defense counsel about the objections was over the phone. *Id.*

Defendant's contention is that defense counsel was deficient because he withdrew defendant's objections to the PSR without defendant's permission. Although defendant testified he did not agree to the withdrawal of the objections, an affidavit drafted by defendant in April

2011 reflects counsel advised defendant of his strategy to withdraw the objections to "get the 3

points credited back to the report" and that defendant was aware counsel would be filing a written

withdrawal. Defendant's Exhibit H, Document 1-2 at 52-55. Further, at the sentencing hearing,

the court provided defendant more than one opportunity to present any objections to the PSR, and

defendant did not do so. While defendant testified counsel instructed him to tell the judge the PSR

was correct, defense counsel denies any such conversation, and there is inadequate support for

defendant's claim.

Defendant HOLSTEIN's allegation that he told his attorney the information in the PSR was

incorrect and that counsel instructed him to falsely state to the sentencing judge that the PSR was

correct is a serious allegation. The rules requiring the court to address the defendant personally

during any plea, and the requirement that a defendant be allowed to allocute are designed to

eliminate these types of claims. Further, the sentencing judge asked defendant HOLSTEIN

directly if the PSR was correct. There is little else the court could have done. The evidence does

not reflect there was any disagreement defendant may have had with counsel's strategy, nor is

there any independent evidence HOLSTEIN gave any instruction to counsel, direct or otherwise,

not to withdraw the objections. Defendant has not shown counsel's withdrawal of the objections

was contrary to defendant's instructions, that defendant did not acquiesce to the withdrawal of the

objections, or that defendant did not permit such withdrawal to occur without objecting.

Defendant also failed to meet his burden of showing a substantial likelihood that if counsel

had not withdrawn the objections, any or all of the objections would have been sustained and the

guideline range would have been reduced. The probation officer's Addendum addressed each of

defendant's objections with minor modifications to the PSR, none of which impacted the guideline

range and, as discussed above, defendant has not presented documentary evidence showing the

Addendum was incorrect, or that any objections defendant asserted would have been sustained in whole or in part. More importantly, defendant has not shown how continuing to assert his objections would have resulted in a lower guideline range or the imposition of a lesser sentence. Defendant has made no showing he was prejudiced by the withdrawal of his objections.

Additionally, counsel withdrew defendant's objections and requested they not be considered for any purpose in order to "salvage any type of sentencing benefit [defendant] might get," *i.e.*, to preserve defendant's 2-level adjustment for acceptance of responsibility. At sentencing, counsel advised the court the objections were withdrawn upon learning the probation officer and government interpreted defendant's objections as showing a lack of acceptance of responsibility, and argued the government, by requesting the removal of defendant's 3-level adjustment from the PSR and seeking a 2-level increase for obstruction of justice, was attempting to punish defendant for making the objections. Not only was the decision to withdraw the objections a strategic one, counsel's strategy in all probability preserved defendant's 2-level acceptance of responsibility adjustment. A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011).

Lastly, defendant contends counsel's withdrawal of the objections allowed an incorrect PSR to stand without challenge. Again, however, defendant has not at all demonstrated the PSR was incorrect. Defendant acknowledged that "some of his objections were admittedly wrong," that he failed to advise the court of inaccuracies in the PSR at his sentencing hearing despite the court's reassurance that defendant had been given the 2-level reduction for responsibility, and has failed to provide this court with any evidentiary support for his claim that the PSR is incorrect. Defendant's

claims should be denied.

### G. Other Alleged Deficiencies

Defendant also argues counsel was deficient for failing to object when the trial court denied him his right to allocution. As discussed in part VIII, § C., *infra*, the trial court *did not deny* defendant his right to allocution. Consequently, counsel was not deficient for failing to assert what would have been a frivolous objection.

Defendant contends counsel was deficient for failing to object to defendant's sentence on double jeopardy grounds. However, as discussed in part IX, *infra*, defendant has not shown his sentence and punishment were in violation of the Double Jeopardy Clause. Counsel was not deficient for failing to assert what would have been a frivolous objection.

Defendant contends counsel was deficient for failing to object to the trial court's restitution order. To the extent, if any, defendant is arguing counsel should have objected to the restitution order based on the amount of restitution ordered, defendant has not submitted competent evidence demonstrating any error existed. If it is defendant's position that counsel should have objected to the restitution order because the court failed to consider the value of property forfeited to the government, then defendant's position is without merit since no property was forfeited. If it is defendant's position that counsel should have objected to the restitution order because there was no discussion at the sentencing hearing as to how the loss amount was determined, defendant has failed to show the legal or evidentiary basis for such an objection, nor has he shown such an objection would been sustained or would have altered the trial court's restitution order. Lastly, if it is defendant's position that counsel was deficient for failing to object to the restitution order based on an alleged ambiguousness of the schedule and/or the amount of discretion given to the Probation Department, defendant fails to show the legal or evidentiary basis for such an objection,

that such an objection would have been sustained, or how an objection would have altered the trial court's restitution order.

Defendant alleges counsel was deficient because he did not protect defendant from the coercive tactics of the government during the meeting with the prosecutor prior to the plea agreement. Again, even if the prosecutor made the statements alleged by defendant during a pre-plea meeting, it is not inappropriate for a prosecutor to inform a defendant of the evidence that would likely be presented in a jury trial, or of her opinion as to the strength of her case. Defendant does not identify what "protective" actions he contends counsel should have taken, nor does he identify how he was prejudiced by counsel's failure to take any action.

Defendant argues counsel was deficient because he did not object to the trial court giving defendant "wrong information regarding the law" or misinformation "about the levels of punishment." The basis of this claim is unclear and, in any event, is conclusory. Defendant has not shown the trial court made an erroneous statement or admonition and he has not shown counsel was deficient. These claims should be denied.

## VII.
## VALIDITY OF GUILTY PLEA

A guilty plea is a waiver of certain constitutional rights and a defendant must make it intelligently and voluntarily for it to be effective. *See Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Defendant initially argues his guilty plea was invalid because it was not entered voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. In its response, the government sets out, at pages 16 and 18, the appropriate case law governing the validity of guilty pleas and the presumptions and evidentiary weight afforded plea documents and proceedings in open court. Defendant's plea will be reviewed under these authorities.

## A. Voluntariness of Plea

Defendant contends he was coerced by the government into pleading guilty. Specifically, defendant references a meeting between himself, his attorney, and the prosecutor in early August 2011, a few weeks before his scheduled trial. According to defendant HOLSTEIN, the prosecutor spoke to him in a "very harsh tone," told defendant to "get real" when telling his version of the events, and informed defendant that the government had numerous Borrowing Base Certificates where cattle were misapplied, that she (the prosecutor) would call the bankers as witnesses who would be believable and would contradict defendant's version of the events, and that she would tell the jury how defendant had purchased a beach house in Florida with the proceeds of his illegal activities and that the jury would see defendant's wife and children enjoying the property he had wrongfully obtained from his false statements to the bank. Defendant appears to argue his plea was involuntary because he was intimidated and chose "to not put [his] wife and children thru [sic] a trial in which hurtful and untruthful things would be potentially said about us" and to otherwise protect his wife and sons.

The fact that a defendant might not want his wife or children to hear adverse evidence at a criminal trial does not constitute coercion. Any defendant who goes to trial will be confronted with the evidence the government contends proves him guilty of criminal conduct. Further, in the August 5, 2011 plea agreement document executed just after this meeting with the prosecutor, defendant avowed his guilty plea "was freely and voluntarily made" and "not the result of force or threats." At rearraignment, in open court and while under oath, defendant gave sworn testimony that nobody threatened him and in no manner was he forced to plead guilty. These statements carry "a strong presumption of verity." While defendant's attestation of voluntariness at the plea hearing is not an absolute bar to his claim of an involuntary plea, it does impose a "heavy burden."

*See United States v. Diaz*, 733 F.2d 371, 374 (5th Cir. 1984). The defendant's representation of voluntariness and the finding by the court that defendant entered a voluntary plea constitute a formidable barrier to a subsequent claim of a coerced plea.

Defendant testified at the evidentiary hearing that the government prosecutor showed him photos of his family at the meeting and told him to "get real" and think about his children. Tr. 84-87. Defendant testified the prosecutor noted during the meeting that defendant's wife's name was on some of the documents and that he took such as a threat that the government would "come after her" if he did not plead guilty. Defendant testified the meeting with the government prosecutor played a big part in his decision to plead guilty to the offense of making a false statement. *Id.* Defendant testified he would not have pled guilty if he had known the prosecutor could not "mess with" his wife and children. Tr. 95.

The government prosecutor also testified at the evidentiary hearing, and stated she was stern in her approach to defendant HOLSTEIN at the meeting due to the overwhelming evidence against him, the large amount of financial loss suffered by the victims, the number of individuals hurt by defendant, and the offensiveness of defendant's conduct. Tr. 32-34. The prosecutor denied telling defendant she would paint a picture of his family any way that she wanted, and stated that although she did not recall showing defendant a photo, any family vacation photo she may have possessed at the meeting would have been supplied by a witness. The prosecutor testified she did not place any ultimatum on defendant, did not threaten to prosecute defendant's wife if he did not plead guilty, did not say defendant would lose his children if he did not plead guilty, and did not make any kind of direct threat. The prosecutor acknowledged she may have told defendant the jury would see defendant's lavish lifestyle financed by the bank's money. *Id.*

Defendant HOLSTEIN's trial counsel, Mr. Willliam Kelly, testified the prosecutor became

frustrated during the meeting with defendant but did not make threats against defendant's wife or

children, and although she cut the meeting short, she did not slam anything. Tr. 212-14. Counsel

explained there was no discussion of pleading guilty at the meeting because the meeting was solely

to hear the government's case against defendant. Tr. 214. Counsel testified he did not remember

any of defendant's family photos being displayed during the meeting, nor did his paralegal who

was also present. Tr. 174. Notes taken by counsel's paralegal did, however, reflect a notation

regarding defendant's wife's Facebook account (the purported origin of the family vacation photo).

Tr. 186. Counsel confirmed that the prosecutor talked to defendant about his alleged misuse of the

borrowed funds on such things as vacations, race horses and a swimming pool. Counsel opined

that he did not think the meeting had any effect on defendant eventually pleading guilty. Tr. 214-

15. Counsel further opined that he believed the meeting between the defendant and himself

privately at counsel's office was what resulted in defendant's decision to plead guilty. Tr. 215.

Defendant HOLSTEIN has not presented "evidence that has independent indicia of

reliability" to substantiate his claims of coercion by the government. Defendant's own testimony

does not conclusively reflect any improper threats, direct or indirect, were made by the prosecutor.

Defendant's subjective belief that his wife would be prosecuted if he did not plead guilty is not a

basis for relief. Defendant's claim of coercion is self-serving and conclusory, and is completely

contradicted by the plain language of the plea agreement and defendant's sworn statements at

rearraignment. Such an unsupported claim does not overcome the presumption that defendant was

truthful at the rearraignment when he averred he was not coerced, nor does it carry defendant's

"heavy burden" of showing his plea was involuntary.

Second, defendant has not shown the prosecutor acted inappropriately in informing

defendant of the evidence that would likely be presented against him in a jury trial, or of her

opinion as to the strength of her case.  Defendant has not shown the statements by the prosecutor overcame defendant's free will in deciding whether to enter a guilty plea at a later date.

Lastly, even if defendant's decision to plead guilty was motivated in part by a desire to protect his family from an uncomfortable trial, a desire to protect others does not render a plea involuntary.  *Cf. United States v. Nuckols*, 606 F.2d 566 (5th 1979) (a guilty plea to prevent relatives from a possible good faith prosecution does not render a plea involuntary).  Defendant has not demonstrated his guilty plea was coerced due to any acts or statements by the government prosecutor or was otherwise involuntary.  This claim should be DENIED.

## B. Knowing and Intelligent Plea

Defendant contends his guilty plea was not knowing and intelligent because it was induced by, and based upon, misrepresentations by defense counsel.  Defendant argues defense counsel misadvised him that his guilty plea to making a false statement (18 U.S.C. § 1014) would not affect his ability to receive a discharge in bankruptcy.  Defendant further alleges counsel misadvised him as to the length of the sentence he would likely receive if he pled guilty, averring counsel told him to expect "around 36 months of possible time."  "[A defendant] who does not receive reasonably effective assistance of counsel in connection with his decision to plead guilty cannot be said to have made that decision either intelligently or voluntarily."  *Cf. United States v. Cavitt*, 550 F.3d 430, 440–41 (5th Cir. 2008) (holding that a lawyer's duty is to provide the client an understanding of the law and to give competent advice, and that if the lawyer is unfamiliar with the relevant facts and law, the client's guilty plea cannot be knowingly and voluntarily made because it will not represent an informed choice).  Defendant appears to argue that had counsel advised him he could not discharge all of his debts, including restitution, in bankruptcy, or that he would receive a prison sentence in excess of 36 months, he would not have pled guilty.

### 1. Lack of Knowledge of Length of Sentence

Although defendant argues counsel gave him incorrect advice as to the length of sentence he would likely receive if he pled guilty, defendant stated during his guilty plea that he had reviewed the guidelines with counsel and <u>understood counsel could not precisely predict what his guideline range might be</u>. In his affidavit filed with the motion to vacate, defendant now avows counsel misadvised him that the sentence would be around 36 months. Defendant contends that had he known he would receive a prison sentence in excess of 36 months, he would not have entered a guilty plea.

At the evidentiary hearing defendant was provided the opportunity to demonstrate he was misadvised by his attorney as to the projected length of sentence he would receive as a result of his guilty plea and, if he was so misadvised, whether such misadvice affected the voluntariness of his guilty plea. Defendant testified that at his fourth meeting with defense counsel, counsel said his initial calculations estimated a total offense level of 24 (resulting in a guideline range of 51-63 months), but that this level could be less because he thought the loss amount alleged was incorrect based on defendant's version of the amounts. Tr. 77. Defendant testified counsel stated as long as the loss amount was below $7 million, it would result in a total offense level less than 24. *Id.* Defendant acknowledged the "$7 million [loss] versus $20 million [loss] level" was "brought up." Tr. 272. Defendant testified that as a result of that meeting, he believed his total offense level would be less than 24. Tr. 77. Defendant testified that at no point did counsel talk about the possibility of a $9 million loss or of restitution in that amount, or of a 9-year sentence. Defendant opined counsel would have never encouraged him to enter a guilty plea knowing such a high level of punishment would be assessed. Tr. 271. Defendant testified counsel made false statements to him about what sentence he could expect to receive. Tr. 270. Defendant also testified he was

misled into thinking he was pleading to a lesser offense when, in actuality, it was the same level

offense, just with a different title. Tr. 271.

Defense counsel testified he talked to defendant about the guideline ranges for both the

bank fraud and making a false statement charges. Tr. 219. Counsel testified he did not recall

specifically talking about defendant's total offense level possibly being a Level 24 but did

acknowledge his paralegal's notes reflected a notation of Level 24. Tr. 217, 219. Counsel

testified he made no promises or assurances to defendant as to what his sentence would be and

never told defendant his sentence would be 30-36 months. Tr. 208. Counsel testified his

paralegal's notes, which were entered into evidence, memorialized the discussion of potential

guidelines, that he never said for certain what the guidelines would be, but only advised what they

potentially might be, and the maximum sentence possible. Tr. 209-10. Counsel explained he

requested the government change the offense charged from bank fraud to making a false statement

simply because it "sounded better" and would be viewed more favorably in public opinion, but

acknowledged there was no real difference in the punishment levels for the two (2) offenses. Tr.

203-04, 219-20. Counsel testified he advised defendant his pleading to the false statement offense

was purely for those reasons and that it would not affect the guideline range. Tr. 219-20.

Defendant has failed to establish counsel gave incorrect advice as to the guideline range or

the length of sentence to be assessed. While the evidence shows there was a discussion about a

total offense level of 24 with a range of 51-63 months (the PSR ultimately determined a total

offense level of 26 with a guideline range of 63-78 months), such discussion did not constitute

ineffective assistance. Indeed, defendant was told by the District Judge that any guideline

calculation at the time of the guilty plea was merely a prediction. Defendant HOLSTEIN even

acknowledged counsel "brought up" the differences between the $7 million and $20 million loss

amounts which would result in a level 24 versus a level 26.  Counsel averred he made no promises or assurances to defendant as to what his sentence would be and never told defendant his sentence would be 30-36 months.  Defendant HOLSTEIN has not met his burden to show counsel promised him a 30-36 month sentence or that counsel misadvised defendant of the relevant guidelines or as to the full range of possible punishment.  Defendant has not demonstrated any misadvice from counsel rendered his guilty plea unknowing and unintelligent.  This ground should be denied.

## 2. Lack of Knowledge of Bankruptcy Consequences

Defendant next alleges counsel did not provide him with an accurate understanding of the collateral consequences of a false statement conviction on the dischargeability of debts in bankruptcy.  Defendant alleges counsel misadvised him regarding the consequences his guilty plea could have on his subsequent bankruptcy proceeding, and that but for such misadvice, he would not have pled guilty but, instead, would have proceeded to trial.

At the § 2255 hearing, defendant testified that during their second or third meeting, he and defense counsel discussed HOLSTEIN filing for bankruptcy and that counsel told him he should not proceed with any bankruptcy filing until the case was further along because a bankruptcy application would not be "well received" by the trial judge.  *Id.*  Defendant testified counsel told him to file for bankruptcy after a sentence was assessed if a sentence was, in fact, assessed.  Tr. 79.  Defendant testified counsel advised he would have 6-8 weeks to self report after sentencing, so bankruptcy could be filed then.  *Id.*  Defendant testified counsel told him any post-sentence bankruptcy proceedings would "essentially flush . . . out" any restitution assessed.  Tr. 94, 139.  Defendant testified he would not have pled guilty to the false statement charge if he had known bankruptcy would not discharge his debts and any restitution assessed.  Tr. 94, 95.

Defense counsel's testimony rebutted defendant's claims.  Counsel testified he had a "very

brief" discussion with defendant about how bankruptcy might affect his criminal case after

speaking with one of defendant's bankruptcy attorneys. Tr. 193. Counsel testified, however, that

he did not give defendant any advice on bankruptcy, and that he referred defendant to his Lubbock,

Texas bankruptcy attorney for bankruptcy questions. *Id.* Counsel testified the only advice he did

give defendant concerning filing for bankruptcy is that he should not file until after sentencing

because he did not think the filing "would sit well" with the district judge. Tr. 193-94. Counsel

testified he did not talk to defendant about his debts or restitution being "washed out" by

bankruptcy and did not give such advice because his practice does not include bankruptcy law. Tr.

194. Counsel acknowledged he told defendant it was his "understanding" that debt based on fraud

was not dischargeable in bankruptcy proceedings and thus requested the government drop the bank

fraud charge in favor of the making a false statement charge. *Id.* Counsel further testified he did

not tell HOLSTEIN that if he pled to the false statement offense rather than the fraud offense that

it would make his debts or restitution obligation dischargeable in bankruptcy. *Id.* Counsel also

testified he did not tell defendant making a false statement was a lesser offense and stated that in

this case, making a false statement was the same level offense as the bank fraud offense initially

charged. Tr. 194-95. Counsel testified he never told defendant's other attorneys that bankruptcy

would discharge any restitution obligation nor did he send any emails to that effect. Tr. 199-200.

Counsel opined that defendant's primary goal during this criminal case was to avoid jail time, and

that the discharge of debts or restitution in a bankruptcy proceeding was not a factor and had

"absolutely no influence" on defendant's decision to plead guilty to the superseding information.

Tr. 215-16. Counsel testified he advised defendant that the only benefit to pleading to the false

statement offense rather than the bank fraud offense would be that "in the future it might bode him

better" because it "sounded better." Tr. 219. Counsel reiterated, however, that he explained to

defendant that pleading to the false statement offense would not "have any effect on his bankruptcy that [counsel] was aware of." Tr. 219-20.

The government prosecutor testified defense counsel sought the false statement charge in lieu of the bank fraud charge because it put a "softer name" to defendant's conduct even though it carried the same punishment.[7] Tr. 35-36. The prosecutor testified defense counsel did not say anything to her about the false statement charge possibly aiding defendant in his bankruptcy proceedings. Tr. 36. In fact, the prosecutor testified she had no discussions whatsoever with defense counsel regarding bankruptcy. Tr. 39.

Defendant has not shown counsel gave incorrect advice to him regarding the "dischargeability" of the debts defendant owed as a result of false statements, or of any restitution assessed by the court, in a bankruptcy proceeding. The sworn testimony on this issue is contradictory, and there is no independent evidence to support defendant HOLSTEIN's version. Defendant did not advise the district judge at the time of plea or sentencing that representations had been made that he would be able to discharge his debts or any restitution ordered by the sentencing judge and defendant has not met his burden of proof on this issue. Defendant has not shown his guilty plea was unknowing and unintelligent. This ground should be denied.

### 3. Lack of Knowledge of Mandatory Restitution

Defendant also contends his plea was involuntary because he did not know his punishment included mandatory restitution. Defendant acknowledges his plea agreement stated the court "can

---

[7]Defendant submitted, as an exhibit during the § 2255 hearing, an August 1, 2011 email from the prosecutor to defense counsel attaching a proposed copy of the Superseding Information striking through the words "false and fraudulent" and inserting in cursive handwriting the word "inaccurate." Defendant appears to suggest this correction reflects counsel's intent to remove any allegation of fraud and indicates counsel was advising defendant as to the dischargeability of his debts in bankruptcy. At the evidentiary hearing, both the prosecutor and defense counsel denied making the strikeout marks or writing the word "inaccurate." Tr. 36-37, 204.

impose . . . restitution to victims . . . which may be mandatory under the law" and which "may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone." Defendant notes, however, that the District Judge confirmed that defendant "may" be ordered to pay restitution, and that the PSR also said restitution "may" be awarded. Defendant explains he was only aware of the possibility of restitution but was under the belief his forfeited and/or foreclosed property would cover any losses to the victims and believed no restitution would be assessed (defendant acknowledges he was aware, however, of the possibility of up to a $1 million fine). Defendant maintains he was unexpectedly ordered to immediately pay over nine million dollars ($9,000,000) in mandatory restitution. Defendant maintains that had he known restitution was mandatory, and that all of his forfeited property and foreclosed property would not be credited toward the losses, he would not have pled guilty.

At the hearing, defendant testified counsel told him restitution might be required but would only be assessed if certain conditions were met.[8] Tr. 94, 139. Defendant testified he focused on the court's language that restitution "may" be mandatory at the time of his guilty plea and also relied on counsel's advice. Tr. 124. Defendant testified he was not aware restitution *was* mandatory, but only thought it *might be* mandatory. Tr. 94, 124, 139. Defendant testified that if he had known the court would order restitution to Happy State Bank in the amount of $4 million, he would not have pled guilty. Tr. 95

The defendant need not have a great deal of knowledge for his guilty plea to pass constitutional muster. *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996). Rather, the defendant need only have "sufficient awareness of the relevant circumstances and likely

---

[8]Defendant testified counsel told him any language of "fraud" would hurt his ability to discharge debt in bankruptcy and thus counsel attempted to convince the government to substitute the language "false and fraudulent" in the superseding indictment with the language "inaccurate." Tr. 94.

consequences" of the plea. *Id.* Defendant's primary complaint on this ground appears to be that while he entered his guilty plea knowing there was a *possibility* of restitution, he did not know restitution was mandatory. Knowledge that he *could* be required to pay restitution, however, demonstrates sufficient awareness of the consequences of his plea. Defendant has not shown he was unaware of the potential punishment or restitution obligations which <u>could</u> be levied. The Constitution does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea . . . despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (1970). Defendant has not shown his guilty plea was not knowing and fails to demonstrate that had he known restitution was mandatory rather than possible, he would not have entered a guilty plea but, instead, would have insisted upon going to trial.

Additionally, the government did not seek forfeiture, and no order of forfeiture was entered. Consequently, there was no forfeited property to be credited toward the loss amount or the restitution assessed. To the extent defendant is using the term "forfeited" to mean "foreclosed," the property foreclosed upon and seized by Happy State Bank as security for the debt was accounted for in the PSR. Moreover, defendant's personal and independent belief that his foreclosed property would cover the losses to the victims and eliminate the need for any order of restitution does not render defendant's plea unknowing when such belief is shown to be erroneous. The Presentence Report, based upon the information available to the probation officer, showed the foreclosed property would not cover the victims' losses. Defendant has not explained, much less proven, that the value of his property should have been sufficient to cover the victims' losses. Defendant has not demonstrated his plea was unknowingly or unintelligently made. This ground should be DENIED.

## VIII.
## TRIAL COURT ERROR[9]

### A. Rule 11 Violation

Defendant contends the trial court failed to comply with Rule 11 of the Federal Rules of Criminal Procedure at his guilty plea.  Pursuant to Rule 11, before accepting a plea of guilty the court must address the defendant personally in open court and "inform the defendant of, and determine that the defendant understands . . . the court's authority to order restitution."  Defendant contends the court varied from the procedure required by Rule 11 in that defendant was not told restitution was mandatory and the court did not advise defendant as to the probable amount of such restitution.

Since defendant HOLSTEIN did not raise this issue on direct appeal, it is not cognizable, but even if it were, there was no violation of Rule 11.  The transcript of the rearraignment reflects the court clearly informed defendant of its authority to order restitution stating:

> [T]he law provides for restitution to victims and the community, which may be mandatory under the law and which you agree may include restitution arising from relevant conduct, not limited to that arising from the offense of conviction alone and for costs of incarceration and supervision.  And you may be required – there could be a requirement – you may at some point be required to forfeit property.

*Rearraignment Transcript*, at 10.  Defendant has not demonstrated any Rule 11 violation or constitutional deprivation occured during the guilty plea.  This claim should be DENIED.

### B. Failure to Allow Withdrawal of Guilty Plea

On September 25, 2011, defendant wrote an eleven (11) page letter to the trial court to show the court what he described as "more than just a snapshot of one side of the story" and to

---

[9] In his motion, defendant makes the accusation that the trial court was aware that defendant's family had been threatened by the government prosecutor when it accepted his guilty plea.  It is unclear if defendant is arguing the trial court erred in accepting his plea and that such acceptance resulted in the denial of some constitutional right.  Regardless, defendant's allegation of coercion and threats by the government prosecutor was addressed under § VII and found to be without merit.

"insure [sic] that [the court had] a better since [sic] of the story." In this letter, defendant stated he was not aware his actions were criminal, and explained why he pled guilty, including the government's comments as to the case they would present, his desire "to not put [his] wife and children thru a trial in which hurtful and untruthful things would be potentially said about us," and his experience of witnessing the conduct of jurors in another case. Defendant requested "mercy" at sentencing, and requested a form of punishment that would not separate him from his family.

Defendant now contends this letter was actually "new information" that should have compelled this court to "*sua sponte* withdraw his guilty plea and enter a plea of not guilty." Defendant contends his letter told the court "he was innocent of the charges" and was "an attempt to withdraw his guilty plea." Defendant maintains the trial court erred in not allowing defendant to withdraw his guilty plea.

At the evidentiary hearing, defendant testified he wrote the letter to the trial judge because he wanted a trial. Tr. 99. He acknowledged, however, that nowhere in the letter did he ask for a trial, nor did he ask to withdraw his guilty plea. Tr. 113.

The letter referenced by defendant is merely a plea for leniency and cannot seriously be argued to be an attempt to withdraw his guilty plea. A request for mercy and/or for a non-custodial sentence is contrary to an intent to withdraw a guilty plea. Moreover, as this claim was not raised in a direct appeal of defendant's conviction and defendant has not shown cause for the procedural default or prejudice as a result (as noted under § IV. *supra*), this claim has been waived. In any event, the undersigned finds the sentencing court did not constitutionally err in failing to interpret defendant's letter as a motion to withdraw his guilty plea. Defendant's claim should be DENIED.

## C. Denial of Allocution and Coercion

Defendant also argues his constitutional rights were violated when the trial court (1) denied

his right to allocute at sentencing, and (2) coerced defendant into waiving his objections to the PSR. Specifically, defendant contends the court did not personally address him and allow him to speak in mitigation of sentence but, instead, cut him off when he attempted to speak.[10]

These claims were not raised on direct appeal and are not cognizable. However, even if they were, the record shows the sentencing court, after clarifying that defendant HOLSTEIN believed the PSR and the addendum, to the extent it clarified the PSR, were correct, allowed defendant HOLSTEIN to "make a statement generally, not just about the Presentence Report." Defendant proceeded to do so and apologized to the victims, noted the character letters the court had received, and expressed his faith in the justness of the punishment he was to receive. It is abundantly clear that defendant HOLSTEIN not only was not denied his right to allocute, he allocuted.

Nor has defendant shown the trial court coerced him into waiving his objections to the PSR. After noting the written objections had been withdrawn, the court allowed defendant an opportunity to object to anything in the PSR, and said she would listen to him. Defendant acknowledged some of the facts in the written objections "were just wrong," but when given the opportunity to tell the Court anything he believed was wrong with the PSR, defendant stated there was nothing he wanted corrected. Defendant HOLSTEIN has failed to show any coercion by the trial court or denial of the right to allocute.

### D. Trial Court Error in Ordering Restitution

Lastly, defendant contends the trial court erred when it ordered $9,296,578.00 in restitution because (1) the court miscalculated the amount of loss used to determine the restitution award,

---

[10]In his reply, defendant notes this allegation was made to show counsel was ineffective rather than intended as a separate error.

including failing to properly consider the value of the property forfeited to the government; (2) the restitution was ordered without discussing how the amount was calculated; and (3) the restitution schedule is ambiguous and gives too much discretion to the Probation Department to enforce.

Complaints concerning restitution may not be addressed in § 2255 proceedings. *See United States v. Hatten*, 167 F.3d 884, 886-87 (5th Cir. 1999). Even if such claims were cognizable in a § 2255 motion, these complaints were not raised on direct appeal. Further, despite being given numerous opportunities, defendant HOLSTEIN has not established what he contends the correct loss amount or correct restitution should have been or in what way the calculations in the PSR were incorrect. Lastly, <u>no</u> property was forfeited to the government. Defendant's claims should be DENIED.

IX.
### DOUBLE JEOPARDY/ CRUEL AND UNUSUAL PUNISHMENT

Defendant contends his sentence violates the prohibition against double jeopardy (in that he "was punished twice for the same crime") because the court forfeited to the government the property he obtained as a result of his criminal conduct, sentenced him to a term of imprisonment, and ordered him to pay restitution, all as punishment for the same conduct. Defendant also argues the forfeiture of his property, his sentence of imprisonment, and his requirement to pay restitution, constitute cruel and unusual punishment. Defendant appears to argues the restitution order constitutes cruel and unusual punishment because (1) the victims will receive more than their actual loss because defendant's property was sold as collateral (the victims will receive a windfall) and (2) the restitution amount is not proportional to the victims' losses.

These claims were not raised on direct appeal and are not cognizable in a § 2255 motion. Further, defendant HOLSTEIN did <u>not</u> forfeit any property to the government pursuant to an Order from this Court. While he was sentenced to a prison term and also ordered to pay restitution to the

victims of his crime, defendant has not shown how such punishment is in violation of the Double Jeopardy Clause. *Cf. United States v. Schinnell*, 80 F.3d 1064, 1067-68 n. 5 (5th Cir. 1996) (multiple punishments for a given offense imposed in a single proceeding violate the Double Jeopardy Clause only if they are not legislatively authorized). Defendant has not cited any case authority supporting his claims of cruel and unusual punishment, nor has he otherwise demonstrated an Eight Amendment violation. Defendant's claims should be DENIED.

## X.
## ACTUAL INNOCENCE

Lastly, defendant argues "he is actually innocent" of the offense of which he was convicted because: (1) most of the Borrowing Base Certificates were not signed; (2) Happy State Bank did not require defendant to use their Borrowing Base Certificate forms; (3) not all of the Borrowing Base Certificates were fraudulent; (4) the PSR is incorrect and defendant objected to the PSR; (5) defendant only signed the factual resume under duress because of threats made by the government regarding his family; (6) no reasonable juror would have convicted defendant; and (7) defendant did not commit the fraud offense with which he was originally charged. On December 20, 2013, after the evidentiary hearing, defendant submitted a brief arguing he must demonstrate his actual innocence in order to be entitled to a review of counsel's failure to seek to withdraw defendant's guilty plea within the context of his ineffective assistance of counsel claims. In this brief, defendant argues he is actually innocent of making a false statement to Happy State Bank because he never represented to the bank that he or his company "owned 100% of the cattle." Defendant also argues he is actually innocent of the bank fraud charges because he never represented to the bank that all of the cattle in the feed yard were owned by his company and, therefore, were secured property of the bank. Defendant also contests other allegations of misrepresentations he purportedly made, as well as a finding in the PSR that defendant used the line of credit with the

bank to pay himself a $350,000 yearly salary. Defendant concludes he has shown actual innocence, and that the court should consider whether he was denied effective assistance of counsel due to defense counsel's failure to seek to withdraw defendant's guilty plea prior to sentencing.

Defendant's claims of ineffective assistance of counsel were not contingent upon a showing of actual innocence and the court has addressed the merits of defendant's claim of ineffective assistance of counsel for failure to file a motion to withdraw defendant's guilty plea. Moreover, while the United States Supreme Court has not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of "actual innocence," *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013), the Fifth Circuit, as noted by the government, has determined that a claim of "actual innocence" is not a free-standing ground for relief but, instead, is a gateway to consideration of claims of constitutional error that otherwise would be barred from review. *United States v. Scruggs*, 691 F.3d 660, 671 (5th Cir. 2012). Defendant's claim of actual innocence as an independent, free-standing claim for relief is not cognizable in this proceeding and should be DENIED.

Even if defendant's claim of actual innocence is considered only as a gateway to consider other claims, defendant has not demonstrated actual innocence. Defendant has not shown this court, with appropriate supporting documentation, that he did not knowingly make material false statements or willfully overvalue the properties he pledged as security to Happy State Bank in order to influence the bank's decision to approve additional loans or extensions of credit. While defendant has testified he had valid explanations for the overvaluation of the property secured to the bank, he has failed to demonstrate that the borrowing base certificate reports he submitted to Happy State Bank were accurate, he has failed to show they did not contain false statements, or

that any inaccuracies in the report were inadvertently made rather than knowingly made, or that

such inaccuracies were not made for the purpose of securing additional monies from the bank.

Nor has defendant indicated what barred constitutional claims this court should consider upon a

demonstration of actual innocence. All of defendant's claims, even if procedurally barred, have

been considered in this Report and Recommendation. Defendant's claim of actual innocence

should be DENIED.

## XI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States

District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence

by a Person in Federal Custody filed by defendant TYLER HOLSTEIN should be GRANTED , IN

PART, to the extent his 108-month sentence should be vacated, and a new sentencing hearing be

held. The remaining claims asserted in the motion to vacate are without merit and should be

DENIED.

## XII.
## INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ____/7th____ day of March 2015.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C)), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).